OHIO POWER CO., APPELLANT, *v.* VILLAGE OF ATTICA ET AL., APPELLEES.

(No. 69-682—Decided July 15, 1970.)

38

*Messrs. Day, Ketterer, Raley, Wright & Rybolt, Mr. John G. Ketterer, Mr. John F. Buchman, Messrs. Spitler & Flynn* and *Mr. Fred L. Forni,* for appellant.

*Mr. Robert C. Carpenter,* for appellee Village of Attica.

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. Robert P. Mone* and *Messrs. Tomb & Hering,* for appellee North Central Electric Cooperative, Inc.

CORRIGAN, J. In order to reach the merits of the questions presented in this appeal we must first determine whether the appellant, Ohio Power, has standing to prosecute the action.

R. C. 1702.12(H) provides, in part:

"No lack of, or limitation upon, the authority of a corporation shall be asserted in any action except (1) by the state in an action by it against the corporation, (2) by or on behalf of the corporation against a trustee, an officer, or a member as such, or (3) by a member as such or by or on behalf of the members against the corporation, a trustee, an officer, or a member as such. * * *"

That statute precludes appellant from contesting the authority of North Central to accept the franchise from the village.

However, in this action Ohio Power is contesting the authority of the village to grant the franchise, a matter in which Ohio Power, as a supplier of power to the village under an existing franchise, has a vital interest. We con-

clude, therefore, that Ohio Power has standing, and proceed to the merits.

The capital issue tendered for our consideration is whether a nonprofit corporation, organized for the purpose of supplying electricity to its members, is a public utility to which a municipal corporation may grant a franchise under Section 4, Article XVIII of the Ohio Constitution.

Section 4, Article XVIII, reads:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

From a reading of Section 4 it is clear that the word "others" in the phrase "may contract with others for any such product or service" contemplates that municipal contracts for the supplying of a utility service may be entered into with a public utility. *East Ohio Gas Co.* v. *Pub. Util. Comm.*, 137 Ohio St. 225; *Ohio River Power Co.* v. *Steubenville*, 99 Ohio St. 421.

The specific question to be determined is whether North Central is a public utility to which a municipality may grant a franchise for the supplying of electric power.

At the outset, we recognize that there is a split of authority as to whether such cooperative electric companies as North Central are public utilities. Annotation, 132 A. L. R. 1495, 1504.

For decisions holding them to be public utilities, see *Kosciusko County Rural Elec. Corp.* v. *Public Service Comm.*, 225 Ind. 666, 77 N. E. 2d 572; *Alabama Power Co.* v. *Cullman County Elec. M. Corp.*, 234 Ala. 396, 174 So. 866; *Rural Electric Co.* v. *State Board of Equalization*, 57 Wyo.

451, 120 P. 2d 741. Compare *Bookhart* v. *Central Electric Power Cooperative, Inc.,* 219 S. C. 414, 65 S. E. 2d 781, with *Black River Electric Cooperative, Inc.,* v. *Public Service Comm.,* 238 S. C. 282, 120 S. E. 2d 6. Contra, *San Miguel Power Assn.* v. *Public Service Comm.,* 4 Utah 2d 252, 292 P. 2d 511; *Clearwater Power Co.* v. *Washington Water Power Co.,* 78 Idaho 150, 299 P. 2d 484; *Socorro Electric Cooperative, Inc.,* v. *Public Service Co.,* 66 N. M. 343, 348 P. 2d 88.

Ohio Power contends that a corporation supplying electric power to a municipality under a franchise must be organized under the public utility statutes and be subject to regulation thereunder in order to be designated and regarded as a public utility.

North Central is not subject to control by the Public Utilities Commission, as is demonstrated by R. C. 4905.02 which reads:

"As used in Sections 4905.01 to 4905.64, inclusive, of the Revised Code, 'public utility' includes every corporation, company, copartnership, person, or association, their lessees, trustees, or receivers, defined in Section 4905.03 of the Revised Code, including all telephone companies, but *excepting such other public utilities as operate their utilities not for profit,* such other public utilities as are owned or operated by any municipal corporation, and railroads as defined in Sections 4907.02 and 4907.03 of the Revised Code." (Emphasis added.)

It is not essential that a utility be subject to regulatory control by the commission in order for it to be a public utility. The General Assembly, in R. C. 4905.02, gave recognition to this fact by specifically excepting "such other *public utilities* as operate their utilities not for profit." Indeed, if such corporations were not considered to be public utilities by the General Assembly, it would not have been necessary to specifically except them from the operation of public utility regulatory statutes.

Nonetheless, Ohio Power asserts that North Central cannot be a public utility because a public utility must

hold itself out to provide a service to the public generally, which service the public has a legal right to demand.

The attributes of a public utility were discussed in *Industrial Gas Co.* v. *Pub. Util. Comm.*, 135 Ohio St. 408, wherein paragraph one of the syllabus reads:

"Whether a corporation is operating as a public utility is determined by the character of the business in which it is engaged."

In the course of the opinion, it was said, at page 413:

"A public utility to the extent of its capacity is bound to serve those of the public who need the service and are within the field of its operations, at reasonable rates and without discrimination. * * * Yet it is not a controlling factor that the corporation supplying service does not hold itself out to serve the public generally. It has been held that a business may be so far affected with a public interest that it is subject to regulation as to rates and charges even though the public does not have the right to demand and receive service. *German Alliance Ins. Co.* v. *Lewis*, 233 U. S., 389, 58 L. Ed., 1011, 34 S. Ct., 612, L. R. A. 1915C, 1189.

"Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is determined by the nature of its operations. Each case must stand upon the facts peculiar to it. A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by the duly constituted governmental authority. * * *"

In the *Industrial Gas Co. case,* the court applied the above enumerated criteria in determining whether the company in question was a public utility and subject to regulation by the commission. Here, although the corporation in question is specifically excepted by statute from regulation by the commission, the factors to be considered in determining whether it is a public utility are the same.

We must, therefore, consider the nature of North

42

Central's operation. An examination of North Central's articles of incorporation reveals that it was organized to generate and sell electric energy "to its members only," who could be "any person, firm, corporation or body politic," and membership was conditioned upon payment of a membership fee. In 1962, subsequent to the commencement of this action, the following provision was added to the purpose clause:

"* * * provided, however, that nothing contained in this Article, or elsewhere in these Articles of Incorporation, shall be deemed or construed to prevent or prohibit the corporation from generating, manufacturing, purchasing, acquiring or accumulating electric energy for non-members, or from transmitting, distributing, furnishing, selling or disposing of such electric energy to, or rendering services to non-members, nor to prohibit the corporation from executing and performing franchise or other contracts with political subdivisions or bodies politic providing for the furnishing of electric energy or rendering of services to such subdivisions or bodies, or the citizens thereof, in the manner prescribed by law."

By providing electric power to its members, North Central has functioned in a manner which would subject it to control by the commission were it not for the exception expressed in R. C. 4905.02. In other words, North Central's services fall within the realm of activities normally characterized as public utility service. 73 Corpus Juris Secundum 990, Public Utilities, Section 1.

Ohio Power quotes from *Celina & Mercer County Tel. Co.* v. *Union Center Mutual Tel. Assn.,* 102 Ohio St. 487, 493, the proposition that "* * * a public utility * * * must necessarily hold itself out to serve impartially the citizens generally of the territory occupied by it."

That principle is also recognized in *Southern Ohio Power Co.* v. *Pub. Util. Comm.,* 110 Ohio St. 246, wherein paragraph two of the syllabus reads, in part:

"To constitute a 'public utility,' the devotion to public use must be of such character that the product and ser-

vice is available to the public generally and indiscriminately * * *."

Ohio Power points out that (at least in the past prior to the change in its purpose clause quoted above) North Central has required membership as a condition of service, while a regulated utility must accept customers indiscriminately.

Although North Central could not be compelled by the commission to provide service, it appears to be implicit in the purpose for which North Central was organized that it has always had an obligation to make membership available to consumers within the area of its operation and could not unreasonably or arbitrarily refuse an applicant membership.

Moreover, "* * * courts have frequently recognized that electric service co-operatives * * * may be required to extend the benefits to those within the area of service who are willing to comply with the ordinary conditions as to membership as set forth in the charter or reasonable by-laws of the association." Annotation, 56 A. L. R. 2d 413.

We are of the opinion that North Central has served a substantial part of the public, that its business is "affected with a public interest," and therefore that the former membership requirement does not disqualify it from being regarded as a public utility. We observe also that, following the change in North Central's purpose clause, the membership question is no longer significant as it can now provide service to nonmembers.

Furthermore, when North Central accepts the franchise from the municipality of Attica, it will subject itself to regulation by the municipality. For example, R. C. 743.26 provides that the legislative authority of the municipal corporation in which electric lighting companies establish facilities " * * * may regulate the price which such companies may charge for electric light * * *" and R. C. 4933.13 provides that an electric company may furnish electric power within a municipal corporation "* * * with the consent of the municipal corporation, under such rea-

sonable regulations as such municipal corporation prescribes * * *.''

From the foregoing, we conclude that North Central is a public utility with which the village of Attica may, under Section 4, Article XVIII of the Ohio Constitution, contract for the furnishing of electric power.

We therefore hold that a nonprofit corporation organized to manufacture, distribute and sell electric power to the public, either on a membership or a nonmembership basis, is a public utility, and that a municipality may contract with such a corporation to supply electric power for the use of the municipality and its inhabitants.

Inasmuch as we have determined that North Central is a public utility, and no other issues have been presented, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., LEACH and HERBERT, JJ., concur.
SCHNEIDER and DUNCAN, JJ., concur in the judgment.

SCHNEIDER and DUNCAN, JJ., concurring in judgment. We would conclude that the Ohio Power Company does not have standing to prosecute the action.

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.