EAST OHIO GAS COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as East Ohio Gas Co. *v.* Pub. Util. Comm. (1988), 39 Ohio St. 3d 295.]

(No. 87-1125—Submitted June 9, 1988—Decided November 9, 1988.)

"* * *

WRIGHT, J. East Ohio requests this court to reverse the commission's order approving the Revised Stipulation and Recommendation. East Ohio argues: (1) that MB and Northeast are affiliated within the meaning of R.C. 4905.03(A)(6), so that the commission cannot relieve MB from regulation as a public utility and natural gas company; (2) that even if it is not affiliated with Northeast, a producer of natural gas such as MB with an extensive pipeline system must be subject to regulation as a public utility and natural gas company; and (3) that the sale of pipeline and related facilities by MB to Northeast and the withdrawal of other property by MB from public utility service require compliance with certain statutory procedures that were not followed. The commission argues that East Ohio lacks standing to bring this appeal because, as to East Ohio, the commission's decision is not a final appealable order. We agree that MB and Northeast are affiliated within the meaning of R.C. 4905.03(A)(6), reverse the order, and remand the case to the commission.

## I
## Standing

The commission argues that this court only has jurisdiction to hear appeals of final orders of the commission, R.C. 4903.13[2]; that the existence of a final order depends on a substantial right being affected, R.C. 2505.02[3]; that no substantial right of East Ohio

*Paul T. Ruxin, David Kutik* and *Helen L. Liebman,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *David C. Champion,* for appellee.

[2] R.C. 4903.13 provides in part:
"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable. * * *"

[3] R.C. 2505.02 provides in part:
"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial. * * *"

has been affected; and that, therefore, as to East Ohio, there is no final appealable order. *Ohio Contract Carriers Assn., Inc.* v. *Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E. 2d 758. To state there is no final order *as to East Ohio* is merely to state that East Ohio has no substantial right affected by the opinion and order of the commission. This is a question different from whether there is a final order with respect to the entire case. Clearly, the order, which prescribes and limits the conditions under which MB and its affiliated companies may sell natural gas, affects a substantial right of MB. The question is whether it also affects a substantial right of East Ohio.

The commission argues that the record contains no evidence of any substantial interest of East Ohio. We disagree. In *Ohio Contract Carriers Assn., supra,* we characterized the interest necessary to create a "substantial right" under G.C. 544, the predecessor of R.C. 2505.02, as a " 'present interest' " and an " 'immediate and pecuniary' " interest. *Id.* at 161, 23 O.O. at 369, 42 N.E. 2d at 759. See, also, *In re Guardianship of Love* (1969), 19 Ohio St. 2d 111, 113, 48 O.O. 2d 107, 109, 249 N.E. 2d 794, 795. In its memorandum in support of its motion to intervene in this case, East Ohio, referring to the 825 case in which MB first sought exemption from regulation, alleged:

"* * * that if MBO [MB] could compete for gas customers without regulation and could so draw customers away from East Ohio unfairly, East Ohio and its remaining customers would be adversely affected. * * * Like it had in Case No. 85-825-GA-ARJ, East Ohio has an interest in this case to assure that MBO's supply and distribution are regulated so that MBO and East Ohio may compete fairly."

The commission's attorney examiner granted the motion to intervene, stating:

"* * * East Ohio alleged that it has the same interest in the instant case [as in the 825 case] to assure that MBO's supply and distribution activities are regulated so that MBO and East Ohio may compete fairly.

"3) The motion of East Ohio to intervene in the instant proceeding should be granted."

Moreover, in its opinion and order in this case, the commission stated:

"The Commission is mindful of the circumstances in which East Ohio finds itself at the present time. East Ohio argues it has lost a part of its industrial load to unregulated gas companies and that these companies have an unfair advantage over East Ohio because they are not regulated by the Commission. Recognizing this problem, the Commission issued its 1076 Order setting limits on the activities gas producers could engage in without being considered a natural gas company subject to our jurisdiction. * * *"

Thus, East Ohio's interest is identified in the record as present, immediate, and pecuniary. *Ohio Contract Carriers Assn., supra.*

In *Ohio Power Co.* v. *Attica* (1970), 23 Ohio St. 2d 37, 52 O.O. 2d 90, 261 N.E. 2d 123, we held that Ohio Power, as the supplier of power to a village under an existing franchise, had standing to attack ordinances granting a new franchise to a rural electric cooperative to supply power in a part of the village, stating that Ohio Power had a "vital interest" in the authority of the village to grant the franchise. *Id.* at 38, 52 O.O. 2d at 91, 261 N.E. 2d at 125. Those factors closely parallel the facts in this case. Here, East Ohio has a vital interest, *i.e.,* a present, immediate, and pecuniary interest, in the authority of the commission to exempt MB from regulation. In both cases, a

direct effect on the appellant's sales in a given area is involved.

We recognize that standing to intervene in proceedings before the commission does not necessarily confer standing to appeal to this court. *Ohio Contract Carriers Assn., supra.* However, in this case, the interest identified in the record and relied on by the commission does confer standing to appeal to this court.

Accordingly, we hold that the order of the commission affects a substantial right under R.C. 2505.02, and that it is a final appealable order of the commission as to East Ohio under R.C. 4903.13.

## II

### Affiliation

R.C. 4905.03(A)(6) states in part:

"* * * The commission may, upon application made to it, relieve any producer of natural gas, defined in this section as a gas company or a natural gas company, of compliance with the obligations imposed by * * * [public utility law], so long as such producer is *not affiliated with or under the control of* a gas company or a natural gas company engaged in the transportation or distribution of natural gas, or so long as such producer does not engage in the distribution of natural gas to consumers." (Emphasis added.)

East Ohio argues that MB is "affiliated with" Northeast, a natural gas company. It is undisputed that JR, a company owned by the family interest that owns MB, owns 9.7 percent of the stock of Northeast and that two members of the board of directors of MB and EB are also directors of Northeast. On this issue the commission concluded, based on its finding in a previous case, case No. 85-1974-GA-AEC, which involved Northeast, that "affiliated with" means the ability to direct the policy of, and thus to control, another. Specifically, it found that JR's stock ownership and the common directors did not give MB the ability to control Northeast.

East Ohio argues that to define "affiliated with" in terms of control is to make that phrase synonymous with "control," as expressly used in the statute, a violation of a canon of statutory construction. We start from the premise that construction of the phrase is a legal issue ultimately for this court to decide, and not a factual question which we subject to less intensive examination. *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 110, 12 O.O. 3d 115, 116, 388 N.E. 2d 1370, 1373.

Black's Law Dictionary (5 Ed. 1979) 54, defines "affiliate" as signifying a "condition of being united; being in close connection, allied, associated, or attached as a member or branch." However, the commission's construction of "affiliated with" is markedly narrower, making the phrase virtually synonymous with "under the control of," as used in R.C. 4905.03(A)(6). In making this construction, the commission has failed to abide by a basic rule of statutory construction — that words in statutes should not be construed to be redundant, nor should any words be ignored. 50 Ohio Jurisprudence 2d (1961) 207, Statutes, Section 227. R.C. 4905.03(A)(6) clearly contrasts the terms of "affiliation" and "control" by stating them in the disjunctive. Equating "affiliated with" and "under the control of," as the commission has done, makes the General Assembly's use of the term "control" redundant.

"Affiliated" and "control" are *not* synonymous, yet the commission in its order defines "affiliated with" as "the power to cause the direction of policies, either directly or indirectly." That definition, coupled with the phrase "under the control of," means that the only time that a company affiliated with another entity through

common stock ownership or interlocking directorates can not be granted exemption is when either entity exercises a degree of control akin to an "alter ego." This is too stringent a definition.

We note from the briefs of the parties that there are various definitions of "affiliate" and "affiliated" in and outside the public utility industry.[4] We do not dictate a particular choice, but we do hold as a matter of law that the commission erred in equating "affiliated" with "control" in a sentence where both terms are used. Obviously, the General Assembly intended "affiliated" to have a wider scope in this context.

Therefore, we hold that as used in R.C. 4905.03(A)(6), the phrases "affiliated with" and "under the control of" are not synonymous. In this context, "affiliated with" does not mean the power to cause the direction of policies, either directly or indirectly.

Because of our resolution of this issue, we do not decide the other issues raised by East Ohio.

Accordingly, we reverse the order of the commission and remand the cause for further proceedings in accordance with this decision.

*Order reversed*
*and cause remanded.*

SWEENEY, Acting C.J., YOUNG, LOCHER, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., dissents.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for MOYER, C.J.

---

[4] See, *e.g.*, the Public Utility Holding Company Act of 1935, Section 79b.(a)(11), Title 15, U.S. Code, and regulations adopted under the Natural Gas Act, specifically Section 157.40(a)(3), Title 18, C.F.R.