OPINION
Appellants, Friends of the Ottawa River, Rick Van Landingham, III, Terry Lodge, Mike Ferner, Michael Leonardi, Ben Krompak, Leslie Duden, Beth Overman, Dana Fall, Teresa Flynn, and Carrie Hawkins, appeal from a decision of the Ohio Environmental Review Appeals Commission ("ERAC") upholding appellee, the director of the Ohio Environmental Protection Agency's ("OEPA") issuance of a Section 401 Water Quality Certification to appellee, City of Toledo, Ohio ("Toledo").
This action arises out of Chrysler Corporation's ongoing expansion of its Jeep production plant located on Stickney Avenue in Toledo, Ohio ("Jeep project"). As part of its efforts to keep the Stickney Avenue Jeep Plant operating, Toledo agreed to remediate and prepare several parcels of real estate surrounding the plant for expansion. As a result, Toledo, rather than Chrysler, became responsible for obtaining the various regulatory permits required to prepare the Stickney Avenue site for expansion.
On September 17, 1997, Toledo submitted an application with the U.S. Army Corps of Engineers ("Army Corps"), pursuant to Section 404 of the Clean Water Act (Section 1344, Title 33, U.S. Code) ("Section 404 permit"), for a permit to fill in approximately twenty-five acres of wetlands on the Jeep project site. Included in the twenty-five acres of wetlands, which Toledo seeks to fill in, are 5.34 acres of wetlands adjacent to the Ottawa River.
Simultaneously, Toledo sought certification from OEPA that the Jeep project would not prevent or interfere with the attainment or maintenance of any applicable water quality standards or violate sections 301, 302, 303, 306, or 307 of the Clean Water Act (Sections 1311, 1312, 1313, 1316, 1317, Title 33, U.S. Code) ("Section 401 certification"). Pursuant to Section 401 of the Clean Water Act (Section 1341, Title 33, U.S. Code), Section 325.1(d)(4), Title 33, C.F.R., and Ohio Adm. Code3745-32-02(A)(2), Section 401 certification is required in order to obtain a Section 404 permit. In Ohio, the filing of an application for a Section 404 permit with the Army Corps "constitutes application" for Section 401 certification with OEPA. Ohio Adm. Code 3745-32-04(A). On October 20, 1997, Toledo filed additional documentation in support of its application for Section 401 certification as required by Ohio Adm. Code 3745-1-05(B)(1)(d), and (B)(2).
On November 10, 1997, OEPA published notice of a public hearing to be held on Toledo's application for Section 401 certification in the Toledo Blade. On January 7, 1997, the public hearing was held at Whitmer High School in Toledo.
Following a period of public comment, OEPA issued a Section 401 certification to Toledo for the Jeep project on February 9, 1998.
On February 18, 1998, appellants appealed the issuance of the Section 401 certification to ERAC asserting that the certification was invalid, as Toledo's application was incomplete and that the planned use of the property was changed after the public hearing on certification.
In May 1998, ERAC held a de novo hearing on appellants' appeal. On September 15, 1998, ERAC issued an order, including findings of fact and conclusions of law, affirming OEPA's decision to issue Section 401 certification for filling in the wetlands as part of the expansion of the Jeep project. Appellants appeal from that order, raising the following two assignments of error:
Assignment of Error No. 1:
 It is error for the Ohio Environmental Protection Agency to fail to require an applicant for § 401 certification to fully disclose the composition, including the chemical constituents, of the material proposed to be used as fill, before the public hearing on the application.
 Assignment of Error No. 2:
 It was error for the Environmental Protection Agency to not require reconsideration of the application based on the reconfiguration of facilities in the site plan, because the change required distinctly different alternatives to be considered.
In reviewing an order issued by ERAC, this court is limited to determining whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 3745.06.
In their first assignment of error, appellants argue that OEPA erred in issuing the Section 401 certification for the Jeep project, as Toledo failed to submit all of the information required to obtain such certification. Specifically, appellants contend that Toledo's application for Section 401 certification did not include the chemical composition of the fill material which it intended to use to fill in the wetlands on the Jeep project site as required by Section 325.1, Title 33, CFR ("CFR Section 325.1") and Ohio Adm. Code 3745-1-05(B)(2).
CFR Section 325.1 sets forth the requirement for filing any permit application with the Army Corps. Section 325.1(a), Title 33, CFR With respect to a Section 404 permit application, CFR Section 325.1(d)(4) provides that "the application must include the source of the [fill] material; the purpose of the discharge, a description of the type, composition and quantity of the material; the method of transportation and disposal of the material; and the location of the disposal site." According to the public notice published by the Army Corps in response to Toledo's filing of the Section 404 permit application for the Jeep project, Toledo's application contained only the following information regarding the fill to be used to fill in the wetlands on the site:
 * * * Approximately 32,000 cubic yards of clean fill will be placed in the interior (isolated) wetlands, which comprise approximately 20 acres, and approximately 67,000 cubic yards of clay fill and sloped protection rock will be placed in wetland areas adjacent to the Ottawa River. * * *
Appellants argue that because the filing of an application for a Section 404 permit with the Army Corps "constitutes application" for Section 401 certification under Ohio Adm. Code 3745-32-04(A), an application for Section 401 certification cannot be complete if the underlying Section 404 permit application is not complete.
Ohio Adm. Code 3745-32-04(A) provides as follows:
 Filing an application with the army corps of engineers for * * * [a Section 404 permit] constitutes application for a section 401 water quality certification from the Ohio EPA. If an application, in the judgment of the director, lacks information necessary or desirable to determine whether the applicant has demonstrated [that the discharge of fill material into waters of the state will not prevent or interfere with the attainment or maintenance of any applicable water quality standards or violate sections 301, 302, 303, 306, or 307 of the Clean Water Act, Sections 1311, 1312, 1313, 1316, 1317, Title 33, U.S. Code], the director shall inform the applicant in writing that review of the application will not proceed until the applicant has submitted additional information as described by the director.
Appellants' reading of Ohio Adm. Code 3745-32-04(A) is contrary to the section's plain language. The provision does not provide, as appellants assert, that the filing of a Section 404 permit application with the Army Corps, which contains all of the information required by CFR Section 325.1(b)(2) "constitutes application" with OEPA for a Section 401 certification. Rather, the provision provides that "[f]iling an application with the army corps of engineers for * * * [a Section 404 permit] constitutes application for a section 401 water quality certification from the Ohio EPA." Since it is the Army Corps which grants or denies Section 404 permit applications, the determination of whether such an application is complete is properly determined by the Army Corps. Here, the Army Corps apparently determined that Toledo's application was complete, as it issued the public notice which set its reviewing process in motion.
Appellants' reading of Ohio Adm. Code 3745-02-04(A) also places artificial importance upon the completeness of the underlying Section 404 application to OEPA's review of an application for Section 401 certification. Ohio Adm. Code3745-32-04(A) expressly vests the director of OEPA with the discretion to halt review of an application for 401 certification where the application "lacks information necessary or desirable" to its determination. In addition, Ohio Adm. Code 3745-1-05(B)(2) requires an applicant seeking Section 401 certification to submit documentation of the following:
 Identification of the substances to be discharged, including the amount of regulated pollutants to be discharged in terms of mass and concentration, and * * * the amount of dredged and fill material to be discharged.
 A description of any construction work, fill or other structures to occur or to be placed in or near the stream bed.
 (c) A description of the applicant's preferred alternative for design and operation of the activity.
 (d) Descriptions and analyses of non-degradation alternatives, minimal degradation alternatives and mitigative technique alternatives for the design and operation of the activity that the applicant has considered.
 (e) An estimate of the important social, economic and environmental benefits to be realized through the project or activity if the water quality is lowered, including, as appropriate, the number and types of jobs created and the tax revenues generated.
 (f) An estimate of important social, economic and environmental benefits to be lost if water quality is lowered, such as lost or lowered recreational opportunities.
 (g) To the extent that such information is known to those in the local community or is otherwise public, a listing and description of all government or privately sponsored conservation projects that have specifically targeted improved water quality and/or enhanced recreational opportunities on the water body(ies) affected by the activity.
As a result, where OEPA's review of an application for Section 401 certification is triggered by the submission of an incomplete Section 404 permit application, the applicant must still provide OEPA with the information necessary for its Section 401 review.
Given the plain language of Ohio Adm. Code 3745-32-04(A) and the fact that OEPA's review of an application for Section 401 certification is not dependent upon the completeness of the underlying Section 404 permit application, Toledo's submission of an incomplete Section 404 permit application to the Army Corps does not affect the validity of the Section 401 certification issued by OEPA.
Appellants also contend that Toledo failed to provide all of the additional documentation required by Ohio Adm. Code3745-1-05(B)(2). Specifically, the documentation filed by Toledo in support of its application for Section 401 certification described the material to be used to fill in the wetlands on the Jeep project site as follows:
 * * * As a prerequisite to these activities, approximately 32,000 cy (cubic yards) of fill material (soil) may be placed into the twenty acres of interior (isolated) wetlands. * * *
 Minimal facility expansion/construction activities are to occur in wetlands adjacent to the Ottawa River, in the area of the shipping lot * * *. Facility installations in or near these riverside wetlands — collectively referred to as wetland DW1 in the Wetlands Delineation Report — may require the installation of various materials, including bulkhead-steel sheet piling, filter cloth, and toe-stone protection. In particular, approximately 800 cy of sloped protection rock will be placed into areas below the ordinary high-water mark of the Ottawa River. Additionally, approximately 67,000 cy of clay fill and sloped protection rock will be placed into less than seven of the twenty-two acres of wetlands comprising wetland DW1, in order to bring the area up to grade. * * * (Emphasis added.)
Appellants contend that Toledo's description failed to provide "[i]dentification of * * * the amount of regulated pollutants to be discharged in terms of mass and concentration" as required by Ohio Adm. Code 3745-1-05(B)(2)(a).
Ohio Adm. Code 3745-1-05(B)(2)(a) provides as follows:
 (2) * * * [T]he applicant covered by paragraph (B)(1) of this rule must submit documentation of the following:
 (a) Identification of the substances to be discharged, including the amount of regulated pollutants to be discharged in terms of mass and concentration, and, if [the applicant is applying for Section 401 certification], the amount of dredged and fill material to be discharged.
Appellants read this provision to require all applicants to identify the "amount of regulated pollutants to be discharged in terms of mass and concentration." Thus, under appellants' reading, Toledo was required to determine and provide OEPA with the amounts of "regulated pollutants" contained in the "soil," "rock," and "clay," which it intends to discharge into the wetlands on the Jeep site.
By its terms, Ohio Adm. Code 3745-1-05(B)(2) applies to permit and certification applications for any activity delineated in Ohio Adm. Code 3745-1-05(B)(1). Some of the activities delineated in Ohio Adm. Code 3745-1-05(B)(1) involve the discharge of "regulated pollutants" into the waters of the state by design. See Ohio Adm. Code 3745-1-05(B)(1) (a), (b), (c), and (e). Where an applicant is pursuing such an activity, Ohio Adm. Code3745-1-05(B)(2)(a) plainly requires the applicant to identify the "amount of regulated pollutants to be discharged in terms of mass and concentration."
However, other activities delineated in Ohio Adm. Code3745-1-05(B)(1), include, under subsection (d), the discharge of fill into state wetlands, do not by design involve the discharge of "regulated pollutants." See, also, Ohio Adm. Code3745-1-05(B)(1)(f) and (g). In such cases, the applicant must identify the "substance" and "amount" of material to be discharged, but need not identify the "amount of regulated pollutants to be discharged in terms of mass and concentration," as no "regulated pollutants" are to be discharged.
Appellants' reading of Ohio Adm. Code 3745-1-05(B)(2)(a) would require anyone seeking Section 401 certification for the discharge of ordinary fill into waters of the state to conduct pre-certification testing of the fill material for the presence of "regulated pollutants." While appellants' concern about "regulated pollutants" being present in fill material is valid, Ohio Adm. Code 3745-1-05(B)(2) does not require an applicant to identify ordinary fill in terms of its chemical constituents.
Further, appellants' concern about "regulated pollutants" being present in fill material is addressed elsewhere in the Ohio Administrative Code. Ohio Adm. Code 3745-32-05(C) permits OEPA to "* * * impose such terms and conditions as part of a section 401 water quality certification as are appropriate or necessary to ensure compliance with the applicable laws and to ensure adequate protection of water quality." Ohio Adm. Code3745-32-05(D) permits OEPA to require an applicant for Section 401 certification to "perform various environmental quality tests including, but not limited to, chemical analyses of water, sediment or fill material, and bioassays."[1] These provisions would be rendered partially superfluous by a reading of Ohio Adm. Code 3745-1-05(B)(2)(a), which required all fill material to be chemically analyzed as part of the process of obtaining Section 401 certification. Such a result is contrary to the well-established rule of statutory construction[2] requiring all portions of an enactment to be given meaning and effect. EastOhio Gas Co. v. Pub. Util. Comm. (1988), 39 Ohio St.3d 295, 299.
The documents filed by Toledo in support of its application for Section 401 certification properly identified the substances and amount of each substance which is to be used to fill in the wetlands on the Jeep site. Consequently, Toledo fully complied with the requirements of Ohio Adm. Code 3745-1-05(B)(2)(a).
Appellant's first assignment of error is overruled.
In their second assignment of error, appellants allege that after OEPA certified the Jeep project under Section 401, the planned use of the 5.34 acres of wetlands adjacent to the Ottawa River was altered to such a degree that Toledo's application for Section 401 certification must be resubmitted.
Pursuant to Ohio Adm. Code 3745-1-05(B)(2)(c)[3] and (d),[4] an application for Section 401 certification must contain a discussion of possible "design" and "non-degradation" alternatives to the proposed use of the wetlands. Toledo complied with these provisions in seeking Section 401 certification for the Jeep project. However, after OEPA certified the project, Chrysler altered its plans for the parcel of real estate, which includes the 5.34 acres of wetlands adjacent to the Ottawa River.
Appellants assert that Chrysler changed its planned use of the area covered by the wetlands from a large shipping lot to a narrow loop road; that this change alters the possible alternatives to the proposed use of the site; and that Toledo should therefore be required to obtain Section 401 certification for the new proposed use of the parcel.
The plans originally submitted by Toledo in support of Section 401 certification reveal a large asphalt shipping lot bordered by the Ottawa River on the north and a plant access road on the south. Because the 5.34 acres of wetlands contained in this parcel border the Ottawa River, these wetlands are entirely covered by the shipping lot in these initial plans. On appeal to ERAC, Toledo submitted modified plans which called for the plant access road to be relocated to the far northern edge of the shipping lot.
Appellants attempt to describe the change made in the planned use of the parcel containing the 5.34 acres of wetlands adjacent to the river as a large shipping lot being replaced by a narrow roadway is disingenuous. The change is much more accurately characterized as a change from plans for a shipping lot with an access road along its southern border, to a shipping lot with an access road along its northern border. No additional wetlands are lost due to the change in the location of the access road. In fact, the majority of wetlands are lost to the shipping lot rather than the road in both plans. It is true that a small portion of the wetlands which were to be covered by a shipping lot in the initial plan, are covered by an access road in the updated plans. However, this minor change does not create meaningful, new design or non-degradation alternatives given that most of the wetlands in question remain covered by the shipping lot.
Appellant's second assignment of error is overruled.
Having found both of appellants' assignments of error to be without merit, we affirm the Ohio Environmental Review Appeals Commission's order affirming the Ohio Environmental Protection Agency's grant of Section 401 certification to the Jeep project.
Judgment affirmed.
BROWN, J., and LAZARUS, P.J., concur.
[1] In the present case OEPA did, in fact, impose the following conditions upon the issuance of Section 401 certification for the Jeep project pursuant to Ohio Adm. Code3745-32-05(C) and (D):
 The applicant shall identify the source and the nature of the fill to be placed in wetlands. Ohio EPA shall be satisfied that the quality of the fill material is acceptable before any fill is placed in waters of the State.
 Fill used in this project shall consist of suitable material free from toxic contaminants in other than trace quantities.
 The applicant shall identify to the Ohio EPA Section 401 Coordinator the type of bank protection to be used along the Ottawa River prior to discharging fill material to the wetlands adjacent to the Ottawa River. If sheet piling is selected, then the applicant shall place toe stone along the entire length of sheet pile wall.
[2] OEPA's rules have the effect of legislative enactments and are, therefore, subject to the rules of statutory construction.State ex rel. Miller Plumbing Co. v. Indus. Comm. (1948),149 Ohio St. 493, 496-497.
[3] Ohio Adm. Code 3745-1-05(B)(2)(c) provides that an applicant for Section 401 certification must submit: "A description of the applicant's preferred alternative for design and operation of the activity."
[4] Ohio Adm. Code 3745-1-05(B)(2)(d) provides that an applicant for Section 401 certification must submit: "Descriptions and analyses of non-degradation alternatives, minimal degradation alternatives and mitigative technique alternatives for the design and operation of the activity that the applicant has considered."