OPINION *Page 2 
{¶ 1} Gordon Proctor, Director (individually "director"), the Ohio Department of Transportation ("ODOT"), plaintiff-appellant/cross-appellee, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted a motion for summary judgment filed by Orange Barrel Media, LLC ("Orange Barrel"), Atlas Building, Ltd. ("Atlas"), Stoddart Block, Ltd. ("Stoddart"), and T. Interests Corporation ("T. Interests"), defendants-appellees/cross-appellants, and a motion for summary judgment filed by the City of Columbus ("City"), intervening defendant-appellee. Orange Barrel, Atlas, Stoddart, and T. Interests have filed a conditional cross-appeal from the same judgment.
 {¶ 2} On April 25, 2005, the City adopted an advertising devices graphics plan ("graphics plan"), which permitted "advertising murals" of limitless size, lighting, and spacing, although the text could be no more than 1,200 square feet. Orange Barrel is a company that creates billboard advertising displays. Atlas, Stoddart, and T. Interests each own one property within 660 feet of U.S. Route 23 ("Route 23") or U.S. Route 33 ("Route 33") in downtown Columbus, Ohio, and each property featured a large, outdoor display created by Orange Barrel. R.C. 5516 provides size and spacing requirements for outdoor advertisements and indicates that no advertising device may be erected or maintained within 660 feet of the edge of the right-of-way of a highway on the "primary system." It is undisputed that the signs exceed the size and spacing limitations indicated in R.C. 5516.
 {¶ 3} On August 8, 2005, ODOT filed an action against Orange Barrel, Atlas, Stoddart, and T. Interests, seeking to enjoin the parties from erecting the signs, claiming they were in violation of R.C. 5516. On September 30, 2005, the City was granted leave *Page 3 
to intervene as a defendant to oppose ODOT's action. On October 6, 2005, ODOT filed a motion for preliminary injunction, which was denied October 28, 2005. On January 13, 2006, ODOT, the City, and Orange Barrel, Atlas, Stoddart, and T. Interests filed motions for summary judgment.
 {¶ 4} On June 27, 2006, the trial court issued a decision and a corrected decision denying ODOT's motion for summary judgment and granting the motions for summary judgment filed by the City and Orange Barrel, Atlas, Stoddart, and T. Interests. The trial court found that, although R.C. 5516 was constitutional on its face, it was unconstitutional as applied to the facts of the case because the restriction on commercial free speech was more extensive than necessary to achieve the stated purpose of protecting the public and preserving natural beauty; thus, the City, Orange Barrel, Atlas, Stoddart, and T. Interests were entitled to summary judgment. The trial court also found that, even if R.C. 5516 were constitutional on its face and in its application, ODOT failed to comply with R.C. 5516.01(G) and failed to show that the displays at issue were subject to regulation by ODOT because there was no evidence that the United States Secretary of Transportation ("Secretary") approved Routes 23 and 33 as part of the primary system as defined in R.C. 5516.01(G); thus, the City, Orange Barrel, Atlas, Stoddart, and T. Interests were entitled to summary judgment. The trial court entered judgment on June 29, 2006. ODOT has filed an appeal of the trial court's judgment, and Orange Barrel, Atlas, Stoddart, and T. Interests have filed a conditional cross-appeal of the judgment. The City has filed an appellee's brief. ODOT asserts the following assignments of error:
 I. THE TRIAL COURT ERRED IN FINDING THAT REVISED CODE CHAPTER 5516 IS UNCONSTITUTIONAL AS APPLIED TO THE FACTS OF THIS CASE. *Page 4 
 II. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF-APPELLANT DID NOT FULLY COMPLY WITH THE REQUIREMENTS OF REVISED CODE CHAPTER 5516.
 III. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING DEFENDANTS CROSS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT.
 {¶ 5} In their conditional cross-appeal, Orange Barrel, Atlas, Stoddart, and T. Interests assert the following assignment of error:
 A. The trial court erred in finding that Ohio Revised Code Chapter 5516 and Appellant's regulations are constitutional on their face.
 {¶ 6} We will address ODOT's second and third assignments of error together. Generally, ODOT argues in these assignments of error that the trial court erred in granting summary judgment. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v. The Lima News (1996),109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 7} To understand ODOT's arguments, an overview of pertinent state and federal law is necessary. The 1958 Federal-Aid Highway Act provided that states that *Page 5 
agreed to control outdoor advertising along interstate highways consistent with national standards, now codified in Section 750, Title 23, C.F.R., would receive a federal-aid bonus to help construct the highway. Ohio participated in the federal-aid program and enacted R.C. 5516 to implement the requirements of the program. In 1965, the Highway Beautification Act of 1965 ("HBA"), codified in Section 131, Title 23, U.S. Code and administered by the Federal Highway Administration ("FHWA"), was enacted to induce states to provide "effective control" of advertising devices adjacent to the interstate and federal-aid primary systems, at the risk of a ten percent reduction in the state's highway federal-aid pursuant to Section 131(d), Title 23, U.S.Code. Subject to some exceptions, Section 131(c), Title 23, U.S. Code prohibits all outdoor advertising within 660 feet of an interstate or primary highway. R.C. 5516 was then amended to provide for Ohio's "effective control" of the advertising devices along interstate and primary highways. "Effective control" is defined at Section 750.705(b), Title 23, C.F.R. to mean that a state must assure that signs comply with certain size, lighting, and spacing criteria contained in the agreement between the state and the Secretary.
 {¶ 8} In 1968, the state of Ohio and the Secretary entered into an agreement that allowed ODOT to delegate authority for advertising devices to local governments, but only if the local government adopted a "comprehensive" zoning plan consistent with the size, spacing, and lighting requirements of the HBA. Also in 1968, the HBA was amended. As amended, Section 131(d), Title 23, U.S. Code contains a "customary use" exception that provides that signs, displays, and devices whose size, lighting, and spacing, consistent with "customary use" to be determined by agreement between the state and the Secretary, may be erected and maintained within 660 feet of the nearest edge of the *Page 6 
right-of-way within areas adjacent to the interstate and primary systems, and whenever a bona fide local zoning authority has made a determination of customary use, such determination will be accepted in lieu of controls by agreement. In December 1991, the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA") was enacted. This reform act eliminated the federal-aid highway classification system and created the national highway system. As part of the ISTEA, Section 131(t), Title 23, U.S. Code provides that the terms "primary system" and "federal-aid primary system" mean the federal-aid primary system in existence on June 1, 1991, and any highway that is not on such system but which is on the national highway system.
 {¶ 9} ODOT presents several arguments, which we will first briefly summarize. Although ODOT first asserts that the City's graphics plan is not a bona fide comprehensive zoning plan within the meaning of Section 750.708, Title 23, C.F.R. and was a "sham," passed solely for the purpose of circumventing the HBA and to exceed the size and spacing requirements of R.C. 5516.06 and Ohio Adm. Code 5501:2-2, ODOT asserts we need not even reach this argument because even a bona fide local zoning plan must comply with the size, spacing, and lighting requirements of the HBA as set forth in the 1968 agreement. ODOT points out that, although federal regulations permit a state to delegate control of outdoor advertising within commercial and industrial zones to municipalities, the graphics plan does not comply with the guidelines for such local zoning plans, citing Section 750.706, Title 23, C.F.R.
 {¶ 10} ODOT contends the graphics plan is inconsistent with Section 750.706, Title 23, C.F.R. for several reasons. ODOT first asserts that the graphics plan does not comply with Section 750.706(c)(2), Title 23, C.F.R. because state law requires that any *Page 7 
approved local zoning plan must provide size, spacing, and lighting requirements equivalent to or more restrictive than those set forth in R.C. 5516 and Ohio Adm. Code 5501:2-2, and R.C. 5516.11 provides that the comprehensive zoning by a local zoning authority must establish rules to control the size, lighting, and spacing of the outdoor advertising devices that are equivalent with R.C. 5516. ODOT points out that the size and spacing limitations in the graphics plan are not equivalent and are less restrictive than the limitation in the 1968 agreement (maximum sign size of 1,200 feet; minimum spacing between signs of 250 feet) and Ohio Adm. Code 5501:2-2-02(A)(2)(a) and (3)(b). Thus, ODOT argues, the graphics plan cannot qualify as effective local control under Section 750.706(c), Title 23, C.F.R., R.C. 5516.11, and the 1968 agreement.
 {¶ 11} ODOT also asserts that the graphics plan is not a comprehensive zoning plan that includes the regulation of size, lighting, and spacing of advertising graphics, so Section 750.706(c)(1), Title 23, C.F.R. is not satisfied. ODOT maintains that the graphics plan does not include billboards, does not address on-premise advertising devices (which are exempt from the ODOT permit requirement but are still subject to applicable provisions of the HBA and R.C. 5516), does not contain spacing or lighting criteria, does not contain procedures for enforcement of illegal signs, and does not apply to all commercial and industrial zones in Columbus, but only the downtown district.
 {¶ 12} Further, ODOT asserts that, even if the graphics plan was part of a comprehensive zoning plan that qualified for local control, ODOT and the FHWA have not certified it as such. ODOT claims there is no good-faith basis for the City to believe it can pre-empt the certification process required by the 1968 agreement and R.C. 5516.11. *Page 8 
 {¶ 13} ODOT also argues that the graphics plan does not trigger the "customary use" exception found in Section 131(d), Title 23, U.S. Code, which provides that signs, displays, and devices whose size, lighting, and spacing, consistent with "customary use" to be determined by agreement between the state and the Secretary, may be erected and maintained within 660 feet of the nearest edge of the right-of-way within areas adjacent to the interstate and primary systems, and whenever a bona fide local zoning authority has made a determination of customary use, such determination will be accepted in lieu of controls by agreement. ODOT maintains that the only bona fide determination of a less restrictive customary use by a local zoning authority would be for a use that must have existed as of June 26, 1968, and was incorporated into the 1968 federal-state agreement. However, there was no customary use designation by ODOT and approved by the FHWA in the 1968 agreement; thus, ODOT contends, the default size, spacing, and lighting restrictions in the 1968 agreement apply, even to local comprehensive zoning plans.
 {¶ 14} Orange Barrel, Atlas, Stoddart, T. Interests, and the City (collectively "appellees") counter that ODOT's arguments need not be addressed because ODOT cannot satisfy the statutory jurisdictional prerequisites to control Routes 23 and 33, because they are not part of the "primary system." We agree. R.C. 5516.06, which ODOT alleged appellees had violated, provides that "[n]o advertising device shall be erected or maintained within six hundred sixty feet of the edge of the right-of-way of a highway on the primary system." (Emphasis added.) ODOT argues that Section 131(t), Title 23, U.S. Code provides that the term "primary system" means "the Federal-aid primary system in existence on June 1, 1991, and any highway which is not on such system but which is on the National Highway System." However, in order to define "primary system," *Page 9 
as used in the Ohio Revised Code, we must look to any definition of "primary system" contained in the Ohio Revised Code itself, as the jurisdictional basis for control over various highways within Ohio by ODOT is derived from R.C. 5516. As R.C. 5516.01(G) specifically provides the definition for "primary system," as used within that chapter, that is the definition we must utilize in the present case. R.C. 5516.01(G) provides, in pertinent part:
 "Primary system" means that portion of the state highway system or national highway system located within this state as designated by the director and approved by the secretary of transportation of the United States, pursuant to 23 U.S.C.A. 103(b).
 {¶ 15} Appellees' contention that Routes 23 and 33 do not fall within the above definition of "primary system" is fourfold: (1) Routes 23 and 33 are not portions of the "state highway system," as they are both "United States" routes; (2) Routes 23 and 33 are not portions of the "national highway system," as they are not included on the official map of the national highway system; (3) Routes 23 and 33 are not portions of the "national highway system," as ODOT's director never designated Routes 23 and 33 as such; and (4) Routes 23 and 33 are not portions of the "national highway system," as any designation by ODOT's director as such was not approved by the Secretary.
 {¶ 16} With regard to appellees' first argument, we agree that Routes 23 and 33 are not portions of the "state highway system." Neither party offers any citation to a precise definition of this term. Appellees maintain that, by definition, a "United States" route is not part of the "state" highway system. ODOT counters that the "state highway system" is a generic term that encompasses all highways within the geographical limitations of a state, including United States routes. We must reject ODOT's definition. If *Page 10 
the drafters of R.C. 5516.01(G) had meant the state highway system to comprise all highways within the state, it would have been unnecessary and redundant to include "national highway system" within the definition of a primary system, as "state highway system" would have necessarily covered those roadways within the state that were part of the "national highway system." A basic rule of statutory construction requires that words in statutes should not be construed to be redundant, nor should any words be ignored. East Ohio Gas Co. v. Pub. Util. Comm. (1988),39 Ohio St.3d 295, 299. Moreover, statutory language must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative. State ex rel.Myers v. Bd. of Edn. of Rural School Dist. of Spencer Twp. Lucas Cty.,Ohio (1917), 95 Ohio St. 367, 372-373.
 {¶ 17} Here, if the General Assembly had desired all highways within the state to be included in the primary system, it could have indicated such in simpler terms. We are not permitted to ignore that the legislature chose to draw a distinction between "state highway system" and "national highway system" to define a primary system. Pursuant to the rules of statutory construction, we must assign terms their ordinary and plain meanings. Thus, we must presume the words "state highway system" mean highways with the "state" designation, as urged by appellees. To include in the definition of "state" other highway systems would be to impermissibly enlarge the scope of the term and the statute. See Wachendorf v. Shaver (1948), 149 Ohio St. 231, paragraph five of the syllabus (the statute may not be enlarged by giving a word or phrase any other meaning *Page 11 
except its common, ordinary, and accepted meaning). For these reasons, we find Routes 23 and 33 are not portions of the "state highway system," as used by R.C. 5516.01(G).
 {¶ 18} Appellees assert in their second argument that Routes 23 and 33 are not part of the "national highway system." We agree. Attached to appellees' reply to ODOT's memorandum contra appellees' motion for summary judgment was a map of the national highway system in Columbus. Various roadways on the map are designated by differing colors. Important for purposes of this case, roadways designated with the color gray are deemed "Other Roads (not on NHS)," with "NHS" being the abbreviation for national highway system. Routes 23 and 33 in downtown Columbus are both designated gray. This map was generated by the FHWA's Department of Transportation website and downloaded by a City employee. Although ODOT disputes, in general terms, the accuracy of this map, ODOT fails to submit any other map that conflicts with the map submitted by appellees, and ODOT does not attempt to explain the reason for or source of the claimed inaccuracy in FHWA's map. We find that Routes 23 and 33 are not on the national highway system.
 {¶ 19} With regard to appellees' third argument, we agree that Routes 23 and 33 are not portions of the "national highway system" for the additional reason that the record contains no proof that ODOT's director ever designated Routes 23 and 33 as such. ODOT has failed to present any evidence to substantiate its claim that the director designated Routes 23 and 33 as part of the "national highway system." ODOT claims that the affidavits attached to its motion for summary judgment demonstrate that the director designated Routes 23 and 33 as part of the national highway system. Joseph Hausman, the roadway information manager for ODOT, averred that, in an April 11, 1984 letter from *Page 12 
FHWA to the ODOT director, the FHWA approved the director's designation of the federal-aid primary highway system within the Columbus area. Hausman further averred that Routes 23 and 33 in downtown Columbus were included as part of the federal-aid primary highway system as approved by the FHWA prior to 1984, and remained so until June 1, 1991, at which time Routes 23 and 33 in downtown Columbus continued to be part of the state primary highway system as designated by the ODOT director. However, although Hausman's affidavit may establish that the ODOT director designated Routes 23 and 33 as part of the federal-aid primary system, and Routes 23 and 33 were part of the federal-aid primary highway system until June 1, 1991, it, nevertheless, fails to establish that the ODOT director ever designated Routes 23 and 33 as part of the national highway system or that Routes 23 and 33 ever became part of the national highway system. Roadways within the older federal-aid primary system are not synonymous with roadways on the newer national highway system, as evidenced by Section 131(t), Title 23, U.S. Code, which provides that the term "federal-aid primary system" means the federal-aid primary system in existence on June 1, 1991, and any highway that is not on such system but that is on the national highway system. The federal-aid highway system ceased to exist in 1991, and the national highway system was implemented. In defining "primary system," R.C.5516.01(G) does not include highways that were part of the former federal-aid highway system but only includes highways that were designated part of the new national highway system. Thus, Hausman's affidavit fails to support ODOT's position that the ODOT director designated Routes 23 and 33 as part of the national highway system. *Page 13 
 {¶ 20} ODOT also relies upon the affidavit of Herman Rodrigo to support its proposition. Rodrigo, the director of office program development for the Ohio Division of the FHWA, averred that Routes 23 and 33 were part of the now obsolete federal-aid primary highway system as of June 1, 1991. Rodrigo then states: "Thus, U.S. Route 23 from Interstate 70/71 to Town Street, and South Third Street from Town Street to Interstate 70/71 are part of the National Highway System after June 1, 1991." However, Rodrigo gives no rationale explaining his conclusion that Route 23 is part of the national highway system, and nowhere does he indicate that Route 33 is part of the national highway system. More importantly, Rodrigo fails to aver that the ODOT director ever designated Routes 23 and 33 as part of the national highway system. Thus, we find Rodrigo's affidavit also fails to support ODOT's position that the ODOT director designated Routes 23 and 33 as part of the national highway system.
 {¶ 21} ODOT had sufficient opportunity to present evidence of the designation by the ODOT director of Routes 23 and 33 as part of the national highway system. ODOT has never submitted evidence that the ODOT director made a designation of Routes 23 and 33 as part of the national highway system. The two affidavits submitted by ODOT to prove such suffer from the common deficiency of frequent citations to the former federal-aid primary system, which is now defunct, instead of the national highway system. If the legislature had intended R.C. 5516.01(G) to include roadways formerly designated federal-aid primary system within its definition of "primary system," it could have done so very simply.
 {¶ 22} In fact, as pointed out by appellees, the Ohio legislature amended R.C. 5516.01(G) in 1997, and failed to incorporate the definition of primary system contained in *Page 14 
Section 131(t), Title 23, U.S. Code into the Ohio statute or include the former federal-aid primary system roadways within the statutory definition. ODOT was warned about these defects in the definition of "primary system" in R.C. 5516.01(G) in September 1998, after the General Assembly's amendments to R.C. 5516.01(G) in 1997. In a 1998 letter from Leonard Brown, the Ohio Division Administrator for the FHWA, to the ODOT director, Brown explicitly warned the director:
 * * * [T]he definition of the "Primary System" is incorrect since it is technically no longer an official system. Control of the former "Primary System" was preserved through Sec. 1046(t) of the Intermodel Surface Transportation Act of 1991. It gives the following definition of the Primary System: "For purposes of this section, the terms `primary system' and `Federal-aid primary system' mean the Federal-aid primary system in existence on June 1, 1991, and any highway which was not on such system but which is on the National Highway system." This language is necessary in order to maintain the required control over routes on this former system of roads.
 * * * [W]e must advise you that the recently enacted Sub. H.B. 210 contains provisions that are contrary to the H.B.A. and will prevent ODOT from maintaining effective control. * * *
ODOT refers to appellees' reliance upon this letter as a "red herring." However, ODOT's only support for this claim is the statement, "[d]espite the FHWA's concerns, the definitions in R.C. 5516.01(G) and23 U.S.C. § 131(t) are not mutually exclusive," which fails to rebut or even address Brown's concerns. We have already determined above that the definition in R.C. 5516.01(G) is the applicable statute for determining what constitutes a "primary system" for purposes of R.C. 5516. Further, although Brown's interpretation of Ohio law is not conclusive, as the Ohio Division Administrator for the FHWA, his opinion that R.C.5516.01(G)'s definition is deficient must be given substantial weight. Therefore, we find Routes 23 and 33 are not portions of the "national highway system" because *Page 15 
there was no evidence submitted that ODOT's director designated Routes 23 and 33 as such.
 {¶ 23} With regard to appellees' fourth argument above, because we have found that ODOT failed to demonstrate that ODOT's director designated Routes 23 and 33 as a portion of the national highway system, we need not address whether such a designation was ever "approved by the secretary of transportation of the United States."
 {¶ 24} For all the above reasons, we find ODOT cannot satisfy the statutory jurisdictional prerequisites in order to control Routes 23 and 33, as those routes are not part of the "primary system," as used in R.C. 5516.06. Thus, there remain no genuine issues of material fact, and appellees were entitled to judgment as a matter of law. ODOT's second and third assignments of error are overruled. Having concluded that appellees were entitled to summary judgment on this ground alone, we need not reach the constitutional issues presented in ODOT's first assignment of error, and we make no ruling as to the constitutionality of R.C. 5516. We also need not address appellees' assignment of error upon conditional cross-appeal.
 {¶ 25} Accordingly, ODOT's second and third assignments of error are overruled, we need not address ODOT's first assignment of error or appellees' assignment of error upon conditional cross-appeal, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 FRENCH and McGRATH, JJ., concur. *Page 1